Leo FULLER, Plaintiff-Appellant,

v.

GEORGIA STATE BOARD OF PARDONS AND PAROLES, et al., Defendants-Appellees.

No. 87–8599

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1988.

Neal B. Childers, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before FAY, KRAVITCH and JOHNSON, Circuit Judges.

PER CURIAM:

Fuller, a Georgia inmate, serving a life sentence for rape, filed this *pro se* civil rights action against the Georgia State Board of Pardon & Paroles ("Parole Board"), members of the Board, and David Evans, Commissioner of the Georgia Department of Offender Rehabilitation. Generally, Fuller alleged racial discrimination with respect to the policies, practice and racial balance of the Parole Board. He claimed that he was denied a fair opportunity for parole because he is black.[1]

The defendants moved for summary judgment on the grounds that: (1) The Parole Board was absolutely immune from liability pursuant to the doctrine of sovereign immunity; (2) Fuller failed to state a claim against defendant Evans because he had no authority to grant or deny parole; (3) Fuller had no liberty interest in parole and, therefore, his due process rights were not violated; (4) Fuller did not have standing to challenge the racial composition of the Board; (5) Fuller was not denied parole because he was black or because his alleged victim was white.

Fuller filed a number of *pro se* discovery motions and requested the appointment of counsel. The district court provided summary judgment notice and Fuller filed an opposition to summary judgment including his own affidavit in which he stated that he "was denied a fair and genuine opportunity for parole because he is black."

The district court granted summary judgment in favor of the parole board on the grounds that it was entitled to sovereign immunity pursuant to the eleventh amendment.[2] Moreover, the court granted the defendants' motion for summary judgment in so far as Fuller's claims were predicated on the denial of due process. However, to the extent that Fuller alleged an equal protection violation the court refused to grant summary judgment. Although the court stated that Fuller's affidavit was not sufficient to create a material issue of fact regarding a denial of equal protection the court concluded that Fuller's inability to effectively prosecute the case was related to his *pro se* status. The court, therefore, appointed counsel to represent Fuller and reopened discovery.

Fuller, through his appointed attorney, engaged in discovery after which the defendants moved for a protective order and for summary judgment. In their motion for summary judgment the defendants argued that as members of the Parole Board they were entitled to immunity for their actions taken while performing quasi-judicial functions. Second, they asserted that summary judgment should be granted because the evidence demonstrated that Fuller had not been discriminated against on the basis of his race or the race of his victim.

---

1. In an amended complaint Fuller attempted to add Louise Clifton, Executive Assistant to the Warden of the Georgia State Prison, as an additional defendant. (R.1 Tab 24). However, Clifton was not served with process and the district court granted her motion to dismiss. (R.2 Tab 46 at 2). Fuller does not argue that the district court improperly dismissed his claim against Clifton and, therefore, this issue is deemed abandoned. *Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983).

2. The court additionally granted summary judgment in favor of Evans on the grounds that he could not be held liable for the alleged constitutional violations because he did not have authority to grant or deny parole. Fuller does not argue that the district court improperly granted summary judgment to Evans and, therefore, this issue is deemed abandoned. *Rogero,* 704 F.2d at 520 n. 1.

Fuller argued that summary judgment should not be granted because evidence gathered through discovery sufficiently raised the inference that he had been denied parole solely because he was black. Specifically, Fuller pointed to evidence that: (1) From 1971 through 1986 almost 2½ times as many blacks were incarcerated for rape as whites; (2) from 1976 to 1986 more than twice as many white convicted rapists were paroled on their initial consideration as black convicted rapists; (3) from 1976 to 1986 more than seven times as many whites convicted of murder were paroled on their initial consideration as black convicted rapists; (4) from 1976 through 1977 eight white convicted rapists were paroled on initial consideration while no black rapists were paroled; (5) from 1981 through 1982 four white rapists were paroled on initial consideration while no black rapists were paroled even on their third consideration. Fuller argued that such evidence demonstrated that although the number of black convicted rapists was substantially higher than white convicted rapists the defendants had systematically paroled more whites than blacks. Therefore, Fuller maintained that summary judgment should not be granted.

The district court granted summary judgment in favor of the defendants on the ground that Fuller had failed to establish that the defendants discriminated against him based upon race. The court found that the statistics presented by Fuller were insufficient to establish a *prima facie* case of discrimination because he had not shown that he was similarly situated to white inmates who were granted parole. The court concluded that Fuller had failed to present the overwhelming statistical evidence necessary to give rise to an inference of discrimination.

Fuller argues that the Parole Board was not entitled to summary judgment on the grounds of sovereign immunity. He claims that the Georgia Constitution provides a waiver of sovereign immunity for any claim against the state or one of its agencies for which liability insurance protection has been provided. The state argues that the eleventh amendment prohibits any action against the state and that Georgia has specifically reserved sovereign immunity in its constitution.

■ The Georgia Constitution in Article I, Section 2, para. IX(a) specifically states that "[s]overeign immunity extends to the state and all of its departments and agencies." Although this same provision of the constitution waives sovereign immunity in circumstances in which liability insurance protection has been provided there is nothing in the record indicating that liability insurance has been provided to the Parole Board or that the waiver is applicable here. Accordingly, the district court is affirmed with respect to this ruling.

Fuller next argues that he had a liberty interest in parole consideration and that he could, therefore, invoke the due process clause in his claim against the defendants. Fuller's argument is apparently directed at the district court's grant of summary judgment with respect to his due process claims. However, this issue has been decided adversely to Fuller in *Slocum v. Georgia State Board of Pardons & Paroles,* 678 F.2d 940, 941 (11th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982) which held that no entitlement or liberty interest in parole was created by Georgia statute.

Fuller also argues that he made a *prima facie* case showing discrimination by the Parole Board and that the district court, therefore, improperly granted summary judgment on his equal protection claims. He asserts that the state did not rebut the *prima facie* evidence of discrimination by showing that racially neutral criteria were applied.[3]

---

**3.** Fuller also argues that the denial of parole was in reprisal for filing a civil lawsuit. This issue was not raised in the district court and need not be considered here. *United States v. Hosford,* 782 F.2d 936, 938 n. 1 (11th Cir.), *cert. denied,* 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). He additionally argues that his notice of appeal divested the district court of jurisdiction. This argument is totally irrelevant and unrelated to any alleged error of the district court.

The state argues that the Parole Board members are absolutely immune from liability in damages because their duties are quasi-judicial in nature. Additionally, the state relies on the Supreme Court's recent decision in *McCleskey v. Kemp,* — U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) and argues that Fuller's evidence of a disparate impact on blacks is insufficient. The state asserts that the district court properly granted summary judgment because Fuller made no showing of intentional discrimination on the part of the defendants.

■ This Court has recognized that an inmate may challenge the denial of pardon or parole on equal protection grounds *see e.g. Osborne v. Folmar,* 735 F.2d 1316, 1317 (11th Cir.1984). However, the individual members of the Parole Board are entitled to absolute quasi-judicial immunity from a suit for damages. *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th Cir.1974). Nevertheless, to the extent that Fuller is seeking declaratory and injunctive relief, the shield of absolute immunity is inapplicable. *See Cruz v. Skelton,* 543 F.2d 86, 87 n. 1 (5th Cir.1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977).

In *McCleskey* the Supreme Court rejected an equal protection challenge to the Georgia Capital Sentencing Process. The Court held that the petition presented no specific evidence that "the decision makers in *his* case acted with discriminatory purpose." 107 S.Ct. at 1766 (emphasis in original). The court noted that although it had accepted statistical studies as proof of intent to discriminate in certain contexts, such as an equal protection challenge to the selection of the jury venire and in Title VII cases, the *Baldus* study did not compel an inference of intentional discrimination in McCleskey's case. 107 S.Ct. at 1766–67. The court stated that the capital sentencing decision was fundamentally different because each jury which imposes the death penalty is unique and the decision to impose the death penalty rests on consideration of innumerable factors that vary according to the characteristics of the individual defendant and the facts of the particular capital offense. *Id.* 107 S.Ct. at 1767. The court concluded that "[b]ecause discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." *Id.* 107 S.Ct. at 1769.

Fuller's challenge is more specific than McCleskey's because it focuses on the decisions of a single entity, the Georgia Parole Board, rather than the decisions of many unique juries. The Supreme Court noted that an unexplained statistical showing of disparate racial treatment by a single entity over a period of time could raise the inference of an equal protection violation. *McCleskey,* 107 S.Ct. at 1768 n. 15.

■ However, Fuller failed to provide the "exceptionally clear proof" of discrimination which is required because he did not show that he was similarly situated with white inmates who were paroled. The statistics showing that *white murderers* are paroled more frequently than *black rapists* do not appear relevant. Fuller makes comparisons between the numbers of black and white rapists paroled on initial, second and third consideration. However, it is unclear which, if any, of these comparisons are relevant because he does not state whether he was denied parole on initial, second or third consideration. The decision to grant or deny parole is based on many factors such as criminal history, nature of the offense, disciplinary record, employment and educational history, etc. Fuller does not show himself to be similarly situated, considering such factors, with any inmates who were granted parole. Finally, the statistical evidence reveals that in 1985, the year Fuller was denied parole, *more black* rapists were paroled than whites. Thus, the statistical evidence is ambiguous at best and is "clearly insufficient to support an inference that any of the decisionmakers ... acted with discriminatory purpose." *McCleskey,* 107 S.Ct. at 1769.

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

I disagree with the majority's opinion insofar as it affirms the district court's

order granting summary judgment to the parole board on Fuller's equal protection challenge to his denial of parole. Through discovery, Fuller compiled statistics demonstrating a great disparity between the number of convicted white rapists and convicted black rapists who were granted parole by the parole board. I believe that these statistics provided sufficient evidence to allow Fuller to survive a motion for summary judgment.

Fuller's evidence demonstrates that, from 1971 to 1986, almost two and one-half times more blacks than whites were incarcerated for rape. Yet, during the same period, twice as many convicted white rapists received parole on their initial consideration than did convicted black rapists. Fuller also compiled evidence that (1) during 1976 and 1977, eight white convicted rapists were paroled on their initial parole consideration whereas no blacks were paroled on their initial consideration, and (2) from 1981 to 1982, four convicted white rapists were paroled on their initial consideration while no black rapists were paroled on their *third* consideration for parole.[1]

The majority, while noting that this Circuit has recognized that an inmate may challenge the denial of parole on equal protection grounds, *Osborne v. Folmar*, 735 F.2d 1316, 1317 (11th Cir.1984); *Damiano v. Florida Parole & Probation Comm'n*, 785 F.2d 929, 933 (11th Cir.1986), rejects Fuller's claim. In doing so, the majority relies on *McCleskey v. Kemp*, —— U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

In *McCleskey*, the Supreme Court rejected an equal protection challenge to the Georgia capital sentencing process. The Court held that the *Baldus* study, which indicated that black defendants who killed white victims were more likely to receive the death penalty, was not sufficient evidence on which "to support an inference that any of the decisionmakers in McCleskey's case acted with discriminatory purpose." *Id.* 107 S.Ct. at 1769. However,

*McCleskey* left open the possibility of an equal protection challenge directed to the decision-making of an individual entity, such as the parole board in this case. *See id.* 107 S.Ct. at 1768 n. 15 (unexplained statistical discrepancy in the decisions of a single entity can raise on inference of an equal protection violation). This is precisely the type of challenge Fuller brings here.

*McCleskey* emphasized that each jury that decides to impose the death penalty is "unique in its composition." *Id.* 107 S.Ct. at 1767. Therefore, statistics that purport to depict general tendencies in the imposition of the death penalty by many different juries in many different cases have no relation to a particular jury's decision in a specific case. *Id.* 107 S.Ct. at 1767–68. Conversely, Fuller's statistics focus on the decision-making of the parole board over time. In *McCleskey*, the Supreme Court emphasized that it accepted statistics as proof of discriminatory intent in equal protection challenges to the selection of a jury venire and in statutory claims under Title VII. *Id.* 107 S.Ct. at 1767. The inference drawn from general statistics to a specific parole decision by a parole board is comparable to the inference drawn from general statistics to a specific venire-selection or a Title VII case. Thus, *McCleskey* does not preclude Fuller's claim.

In *McCleskey*, the Supreme Court stated that there was a second reason that general statistics concerning the capital sentencing process were not sufficient to raise an inference of discriminatory purpose whereas general statistics regarding the venire-selection and Title VII contexts were sufficient to raise such an inference. *McCleskey* states that the decision-maker in the capital sentencing context (i.e., the jury) could not be required to explain the statistical disparities raised by the *Baldus* study because public policy protects jurors' verdicts from being scrutinized. *Id.*, 107 S.Ct. at 1768. In contrast, a prosecutor in a venire-selection case or an employer in a

---

1. Additional evidence compiled by Fuller demonstrates that, from 1976 to 1986, more than seven times as many whites convicted of murder were paroled on their initial parole consideration as were blacks convicted of rape. However, the relevance of this statistic is questionable, and I do not rely on it as a basis for my dissent.

Title VII case can be required to explain any statistical disparity in its decision-making. Like the prosecutor or the employer, the parole board can be called upon to explain the great disparity demonstrated by the statistics Fuller has compiled. No public policy dictates that parole board members, as opposed to jurors, should be shielded from having to explain their decisions. In fact, public policy and the constitutional requirement of equal protection demand that the parole board be required to explain the statistical disparity which suggests disparate treatment of black and white convicted rapists.

Finally, the majority states that Fuller has failed to provide "exceptionally clear proof" of discrimination as required by *McCleskey* because he did not demonstrate that he was similarly situated to white inmates who were paroled. I do not quarrel with the fact that *McCleskey* requires Fuller to prove that he was a victim of purposeful discrimination, *Whitus v. Georgia,* 385 U.S. 545, 550, 87 S.Ct. 643, 646–47 (1967), or that Fuller's statistical evidence must be "exceptionally clear," *see McCleskey,* 107 S.Ct. at 1769, before this Court is entitled to infer that the parole board discriminated against him on the basis of race. Nonetheless, it is significant that this case came before the district court on the parole board's motion for summary judgment. Fuller has not yet had a chance to prove that the parole board purposefully discriminated against him. Because I believe that the statistical evidence which Fuller has presented raises a genuine issue of material fact regarding the parole board's actions, I would allow this case to proceed to trial. Accordingly, I dissent.