Phillip Wayne HARRIS,
Plaintiff–Appellee,

v.

David EVANS, Commissioner, Lanson Newsome, Deputy Commissioner, A.G. Thomas, Warden, Defendants–Appellants.

No. 89–8589.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1991.

Terry L. Long, William B. Hill, and Daryl A. Robinson, Office of State Atty. Gen., Atlanta, Ga., for defendants-appellants.

James G. Middlebrooks, Smith, Helms, Mullis & Moore, Charlotte, N.C., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, Senior District Judge.

PER CURIAM:

Plaintiff-appellee Phillip Wayne Harris filed this action pursuant to 42 U.S.C. § 1983, alleging that the policy of the Georgia Department of Corrections that prohibits correctional employees from making parole recommendations directly to the Georgia State Board of Pardons and Paroles violates the First Amendment of the United States Constitution. In an order dated October 28, 1988, the district court granted Harris leave to proceed *in forma pauperis* and held that as an inmate in a Georgia

---

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

prison subject to parole, Harris has standing to bring this action. R1-1. The defendants-appellants, the Commissioner and Deputy Commissioner of the Georgia Department of Corrections and the Warden of the Georgia State Prison at Reidsville, filed a motion for summary judgment, arguing that corrections employees do not have a First Amendment right to communicate directly with the state parole board regarding the parole of a particular inmate. The magistrate recommended that the motion for summary judgment be denied on the grounds that corrections employees do have such a First Amendment right, and the district court subsequently entered an order adopting the magistrate's recommendation. R1-10, 15. The district court subsequently certified this appeal pursuant to 28 U.S.C. § 1292(b).

 Although the appellants did not challenge Harris's standing to bring this action in the district court or in their initial briefs on appeal, we asked the parties to brief this threshold jurisdictional issue. Having reviewed their arguments, we are convinced that, in the context of this action, Harris does have standing to assert the First Amendment rights of corrections employees. The first hurdle in any standing inquiry is the limitation imposed by the "case or controversy" requirement of Article III of the Constitution. *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 954, 104 S.Ct. 2839, 2845, 81 L.Ed.2d 786 (1984); *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). To surmount this hurdle, the plaintiff must allege an actual or threatened injury which is fairly traceable to the challenged action and which is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In his *pro se* complaint, Harris alleges that he has asked corrections employees to write letters to the parole board on his behalf, but that the employees have told him that they are prohibited from doing so and fear termination if they violate the Department's policy. R1-2. His complaint, therefore,

raises a facial allegation that he has been injured by the Department's policy because it has prevented employees from writing to the parole board on his behalf and implicitly shows that a favorable decision would redress his injury, as the employees would no longer hesitate to write on his behalf for fear of losing their jobs. We find this injury sufficiently "distinct and palpable" to satisfy the "case or controversy" requirement of Article III. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see, e.g., United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973) (Holding that an "identifiable trifle" is sufficient injury to establish standing); *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir.1987) (Holding that "focus is on the qualitative nature of the injury, regardless of how small [it] may be.").

 In addition to satisfying the standing limitations imposed by Article III, the plaintiff must also satisfy certain judicially created prudential limitations. One of these limitations is that plaintiffs "must generally assert [their] own legal rights and interests, and cannot rest [their] claim[s] to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Harris's action violates this general prohibition against third-party standing, because he alleges that he has been injured not as a result of any infringement of his own rights, but as the result of the infringement of the First Amendment rights of corrections employees. However, in the context of allegations of violations of First Amendment rights, the Supreme Court has found that competing considerations may outweigh the prudential rationale against third-party standing. *Munson*, 467 U.S. at 956, 104 S.Ct. at 2846, 81 L.Ed.2d at 786. The Court has determined that the dangers of chilling free speech justify relaxing the prudential limitation against third-party standing. The Court explains that " '[l]itigants ... are permitted to challenge a statute not because their own rights of free expression are violated but because of a judicial pre-

diction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Virginia v. American Booksellers Ass'n., Inc.*, 484 U.S. 383, 392–93, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (citing *Munson*, 467 U.S. at 956–57, 104 S.Ct. at 2847, 81 L.Ed.2d at 786 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973))).

Therefore, when a plaintiff challenges a statute on First Amendment grounds as being overly broad, the Court will allow a party "to assert the rights of another without regard to the ability of the other to assert his own claims...." *Munson*, 467 U.S. at 957, 104 S.Ct. at 2847, 81 L.Ed.2d at 786. Instead, the Court concerns itself only with whether the plaintiff satisfies the Article III limitation by alleging an injury-in-fact and whether the plaintiff "can be expected satisfactorily to frame the issues in the case." *Id.* at 958, 104 S.Ct. at 2847, 81 L.Ed.2d at 786. We find that Harris's personal interest in having favorable recommendations made to the parole board on his behalf gives him a strong interest in the outcome of this action such that he can be expected to pursue the issues in this case with an adversarial zeal equal to that which the corrections employees themselves would likely exhibit. We conclude, therefore, that there are no constitutional or prudential standing limitations that preclude Harris from bringing this action.

■ In the context of restrictions placed on the speech of government employees by their employers, the threshold question is whether the prohibited speech can fairly be characterized as constituting speech on a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices...." *Connick*, 461 U.S. at 146, 103

S.Ct. at 1690, 75 L.Ed.2d at 708. When a government employer seeks to regulate employee speech regarding matters of public concern, the courts' task is "to seek 'a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687, 75 L.Ed.2d at 708 (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)).

■ The Department of Corrections policy at issue prohibits corrections employees from communicating directly with the parole board. Employees may submit written communications to the warden "for his endorsement," after which they are forwarded to the parole board. R1–7–Exh. 1. The magistrate and the district court found that this policy suppresses employee speech on matters of public concern. On appeal the defendants argue that an employee's interest in making a recommendation to the parole board regarding a particular inmate is purely a personal matter. We disagree. As the magistrate noted, decisions made by parole boards regarding the release of convicted criminals into society are of great public concern. Citizens who comment on individual parole decisions are offering input on the working of the state's criminal justice system. The fact that the comments are directed to the merits of one particular inmate's case rather than to general policies of the parole board does not change their nature as comments on matters regarding what types of prisoners should, or should not, be paroled.

■ Because the restricted speech involves matters of public concern, *Pickering* requires us to balance the employee's interest in commenting on such matters against the government employer's interest efficient operation. *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687, 75 L.Ed.2d at 708. The magistrate found that the defendants failed to present any evidence in support of their motion for summary judgment regarding their need, for reasons of security

or otherwise, to restrict their employees from communicating directly with the parole board. The defendants do not appeal this finding, nor do they argue on appeal that their interests in efficient operation outweigh the employees' interests in being able to freely communicate with the parole board. We conclude, therefore, that the magistrate and the district court correctly held that the defendants failed to demonstrate that they are entitled to summary judgment as a matter of law.

For the reasons set forth above, the district court's denial of the defendant's motion for summary judgment is AFFIRMED.

WESLEY E. BROWN, Senior District Judge, dissenting:

The majority concludes that the plaintiff, a prisoner, has standing to assert the alleged First Amendment rights of corrections employees. Although the courts have done much to democratize our prisons, I am not aware of any case that has gone so far as to give a prisoner the rights sought here. I would find that the plaintiff has no standing to base a claim on the First Amendment rights of third persons, especially prison guards. Moreover, I would find that the Department of Corrections' policy at issue here does not violate the First Amendment rights of Corrections' employees because the policy regulates employment-related speech that is not a matter of public concern. I would also find that the policy being challenged here is reasonably related to legitimate penological objectives and is not unconstitutional. I therefore respectfully dissent.

## I. Standing.

Phillip Wayne Harris is an inmate presently incarcerated at a Georgia state prison. He filed this action under 42 U.S.C. § 1983, alleging that a policy of the Georgia Department of Corrections ("DOC") and the Warden of the Georgia State Prison at Reidsville, Ga., prohibits correctional employees from making parole recommendations directly to the Georgia State Board of Pardons and Paroles. Plaintiff alleged that this policy violates the First Amendment rights of the prison guards at Reidsville. The policy complained of by plaintiff is set forth in a DOC memorandum as follows:

[I]ndividual employee recommendations to the Parole Board in behalf of inmates must end. It not only violates the principal of chain of command, but may in fact compromise individual employees. Should there ever be the occasion for recommendation other than in the normal parole review process, employees should forward it to the Warden for his endorsement.

As the majority notes, a plaintiff must establish standing in order to satisfy the "case or controversy" requirement of Article III of the Constitution. The law of Article III standing is "built on a single basic idea—the idea of separation of powers." *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The Court stated: "The requirement of standing ... has a core component derived directly from the constitution. A plaintiff must allege a personal injury fairly traceable to the defendant's conduct and likely to be redressed by the requested relief." *Id.* at 751, 104 S.Ct. at 3324. The *Allen* Court also noted that the standing doctrine "embraces several judicially self imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* Thus, as the majority notes, there are two components to the concept of standing: a constitutional limitation that the plaintiff must allege a distinct and palpable injury and various prudential limitations developed by the courts. I believe the plaintiff in the instant case fails to establish standing on either of these two components.

The *Allen* Court recognized that standing doctrine incorporates concepts that are not easily defined. In discussing standing, the Court noted:

[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claim asserted.

*Allen,* 468 U.S. at 752, 104 S.Ct. at 3325. The plaintiff here is an inmate in a Georgia prison. He is attempting to challenge a Georgia Department of Corrections policy that regulates how DOC employees are to submit recommendations concerning parole to the Georgia Board of Pardons and Paroles. The plaintiff's carefully crafted complaint *does not allege that this policy affects any legally protected right of his own.* He does not contend that the DOC's policy deprives him of a liberty interest without due process of law. Rather, his sole assertion is that the policy violates the First Amendment rights of the employees of the Department of Corrections.

A necessary component of standing is for the plaintiff to overcome judicially imposed "prudential" limitations on the right to bring an action. One of these limitations is that plaintiffs generally must assert their own legal rights and cannot rest their claims on the legal rights of third parties. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). As the majority notes, the Supreme Court has found that in the context of First Amendment violations, competing considerations *may* outweigh the prudential reasons against third party standing. (*Citing Virginia v. American Booksellers Assn.,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)). The majority finds, based on these precedents, that the danger of chilling free speech prevails over any prudential concerns in the instant case. None of the cases cited by the majority, however, have extended third party standing to a prisoner and allowed him to challenge the administration of a prison. I believe the cases cited by the majority are inapposite because those cases were not concerned with the special problems recognized by the Supreme Court relating to claims by prisoners and federal court involvement in the administration of prisons.

It would seem to be beyond dispute that certain prudential considerations attach to claims asserted by prisoners. One of the most important of these considerations is the principle that the federal courts should not become unnecessarily involved in prison administration. In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court carefully set forth a standard of review designed to balance the interests of society and those of prisoners. The Court stated:

[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' Union,* 433 U.S. [119] at 128, 53 L.Ed.2d 629, 97 S.Ct. 2532 [2539] [ (1977) ]. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration." *Procunier v. Martinez,* 416 U.S. [396] at 407, 40 L.Ed.2d 224, 94 S.Ct. 1800 [1808] 71 Ohio Ops 2d 139 [ (1974) ].

*Turner,* 482 U.S. at 89, 107 S.Ct. at 2261. The Court recognized that federal courts must take cognizance of claims *affecting the fundamental rights of prisoners,* but the Court cautioned that "[a] second principle identified in Martinez ... is that 'courts are ill equipped to deal with the increasing-

ly urgent problems of prison administration and reform." *Id.* at 84, 107 S.Ct. at 2259. *Cf. Washington v. Harper,* — U.S. —, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) ("We made quite clear that the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights.")

The courts have particular reason to be cautious when the claim before the court involves a challenge affecting the administration of a state's parole review process. In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court rejected an argument that the Due Process Clause applied to all parole determinations. The Court stated:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." [cite omitted]
>
> Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. [cite omitted] This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release.

*Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104. The Court indicated in *Greenholtz* that some procedural protections might be required if the particular state statute creates a liberty interest by granting inmates an entitlement to parole. *See also Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). In *Slocum v. Georgia State Board of Pardons & Paroles,* 678 F.2d 940 (11th Cir.1982), this court found that the Georgia statutes governing parole did not create a liberty interest in parole in favor of incarcerated inmates. We therefore rejected an inmate's challenges to various procedural aspects of his parole determination, stating: "Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness." *Slocum,* 678 F.2d at 942. *See also Gwin v. Snow,* 870 F.2d 616 (11th Cir.1989) (Where an inmate alleged that the Georgia parole statute created a liberty interest, the court dismissed as "meritless" the inmate's due process claim); *Fuller v. Georgia State Board of Pardons & Paroles,* 851 F.2d 1307 (11th Cir.1988) (same).[1]

These decisions concerning prisons and parole are relevant to the issue of standing for several reasons. First, the plaintiff's claim that he has suffered a "distinct and palpable injury" is called into question by the decisions concerning inmate challenges to parole procedures. *Greenholtz* and its progeny must be the foundation for determining what interest, if any, an inmate has in the procedures adopted by a state for making parole determinations. Those decisions define the extent of an inmate's constitutionally protected interest in his parole determination. I do not think an inmate can claim to be "injured" by restrictions on direct parole recommendations if he has no right to have such recommendations made to the parole board. Yet it is far from clear whether the plaintiff in this case has such a right. *See* footnote 1, supra. He clearly has not demonstrated that he has a

---

1. In *Sultenfuss v. Snow,* 894 F.2d 1277 (11th Cir.1990), this court left open the possibility that Georgia inmates have a liberty interest in parole. The *Sultenfuss* court reversed a finding that a due process challenge by Georgia inmates concerning their parole was frivolous under 28 U.S.C. § 1915(d). *Id.* at 1279. The court found that the plaintiffs' claim that they had a liberty interest in parole presented an arguable question of law so as to preclude § 1915(d) dismissal. The court based its decision on regulations passed by the Georgia Parole Board since the *Slocum* decision. The court expressed no opinion on the merits of the plaintiffs' argument, but found that the legal issue should at least be addressed by the lower court.

liberty interest in parole. If the state is in fact depriving the plaintiff of a liberty interest without due process of law by restricting direct parole recommendations, the plaintiff can assert his own rights in an action under 42 U.S.C. § 1983. I think it is inappropriate, though, for us to presume that the plaintiff has suffered an injury and to allow him to challenge the constitutionality of a prison regulation by alleging that the regulation violates the First Amendment rights of prison guards.[2] The plaintiff's apparent belief that he would have a better chance for parole if the prison regulations are changed does not mean that he has suffered a judicially cognizable "injury" as far as standing is concerned.

A second reason for not finding standing here is that we should be hesitant to interfere in the administrative functions of the executive branch when the plaintiff does not seek to redress his own rights but seeks to challenge regulations on behalf of others not before the court. *See Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("When transported into the Art. III context, that principle, grounded as it is in the idea of separation of powers, counsels against recognizing standing in a case brought, not to enforce specific legal obligations whose violation works a direct harm, but to seek a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties. The Constitution, after all, assigns to the

Executive Branch, and not to the Judicial Branch, the duty to 'take Care that the Laws be faithfully executed.' "). Clearly, the administration of a prison and the regulation of corrections employees are matters entrusted to the executive and legislative branches. A proper respect for these functions dictates that we not allow a prisoner to challenge the regulation of a prison when there is no allegation that the prisoner's rights are being impinged upon. *Cf. Turner v. Safley*, 482 U.S. 78, 85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987) ("Prison administration is ... a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint.") *See also Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.").

A third factor to consider here is that the plaintiff's claimed interest in the free speech rights of the prison guards is attenuated and speculative. In his Supplemental Brief on Standing, the plaintiff stated that his "chances for early release from prison are directly affected by the policies at issue," *id.* at 5, but such a belief is sheer speculation in light of the authority of the Parole Board. *Cf. Leeke v. Timmerman*,

---

**2.** In his Supplemental Brief on Standing, the plaintiff asserted something that he had carefully avoided asserting in the complaint: that he had a liberty interest that was affected by the DOC policy. *See* Appellee's Supp. Brief on Standing at 3 ("Phillip Harris seeks to enforce the First Amendment rights of the correctional employees because he has a direct and personal interest in the outcome—his liberty interest."). It appears that this is in fact the basis of the plaintiff's claim. Yet as even a cursory reading of *Slocum* and *Sultenfuss* make clear, the existence of a liberty interest cannot be assumed in these circumstances. Clearly, the plaintiff here has made no showing that he has a liberty interest in parole. The majority's decision allows the plaintiff to do away with any showing of a liberty interest by summarily finding that he has been injured by the restriction on parole recommendations. Maj.Op. at page 866 ("His complaint ... raises a facial allegation that he has been injured by the Department's policy

because it has prevented employees from writing to the parole board on his behalf....") By concluding that the plaintiff has alleged a cognizable injury, the majority bypasses the standards developed by the Supreme Court in *Turner* and *Greenholtz*—cases that were specifically designed to balance the interests of society and those of prisoners. The plaintiff's judicially cognizable interest in parole procedures is defined by those Supreme Court decisions and cannot be expanded by basing his claim on the constitutional rights of others. As a consequence of the slight of hand contained in the plaintiff's complaint, the plaintiff leads us on a wild goose chase through the First Amendment rights of prison employees rather than focusing on the rights of a prisoner. Given the specific standards adopted by the Supreme Court for the review of prisoner's claims, I think the plaintiff is required to pursue this claim based on his own rights and not "sneak through the back door" by relying on someone else's rights.

454 U.S. 83, 86–87, 102 S.Ct. 69, 70–71, 70 L.Ed.2d 65 (1981). Moreover, the plaintiff's claimed injury is not tethered to any specific parole hearing or determination. In the absence of a particular parole hearing or determination on the plaintiff's suitability for parole, the plaintiff's interest in parole procedures is that of an unaffected bystander. *Cf. Whitmore v. Arkansas,* 495 U.S. ——, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (To have standing, the plaintiff's alleged injury must be "concrete in both a qualitative and temporal sense."). There is no indication in the record of what parole procedures are available to the plaintiff or whether he has made an attempt to bring this issue to the attention of the Parole Board. Nor is there a clear indication in the record concerning what information the Parole Board requests from the DOC or how the DOC gathers that information.[3]

I think the foregoing factors merit serious consideration in determining whether the plaintiff has standing to bring this action. In *Allen,* the Supreme Court outlined the standing inquiry in this fashion:

Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative? These questions and any others relevant to the standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only "in the last resort, and as a necessity," [cite omitted] and only when adjudication is "consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process."

I think the exercise of jurisdiction in this case is flatly inconsistent with the principle of separation of powers and the notion that we should exercise the judicial power only when necessary. The majority concludes that because the allegations here concern the First Amendment, society's interests in free speech override all prudential limitations on standing. The mere invocation of the First Amendment, however, does not mean we should disregard prudential concerns. In *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Court stated:

Prisons, it is obvious, differ in numerous respects from free society. They, to begin with, are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. In seeking a "mutual accommodation between institutional needs and objectives [of prisons] and the provisions of the Constitution that are of general application," this Court has repeatedly recognized the need for major restric-

---

3. The plaintiff's interest as far as parole recommendations is concerned must be determined by reference to the parole structure enacted by Georgia law. Upon an examination of this structure, it seems to me that any contention that DOC is improperly restricting information relevant to parole determinations is one that only the Parole Board could make. Clearly, however, the Parole Board is not a party to this action.

Under Georgia law, the duties and functions of the Parole Board are executive in character and no other body is authorized to usurp or substitute its functions for the functions imposed on the Parole Board. O.C.G.A. § 42–9–1. The Board is charged with the duty of determining which inmates serving sentences may be released on parole. It is the duty of the Board personally to study the cases of those inmates whom the Board has power to consider so as to determine their ultimate fitness for parole. *Id.* The exercise of the power to grant parole is discretionary with the Board. *Justice v. State Board of Pardons and Paroles,* 234 Ga. 749, 218 S.E.2d 45 (1975). The Board, in considering any case within its power, shall cause to be brought before it all pertinent information on the person in question. O.C.G.A. § 42–9–43. Included in this information shall be a report by the warden of the correctional institution in which the person has been confined upon the conduct of record of the person while in the institution. *Id.* The Board may also make such other investigation as it may deem necessary in order to be fully informed about the person. *Id.* The warden or jailer of any institution in which the person convicted of a crime is confined and all of the institution's officers and employees shall at all times cooperate with the Board and, *upon its request,* shall furnish the Board with such information as they may have respecting any person inquired about as will enable the Board to properly perform its duties. O.C.G.A. § 42–9–55. (emphasis added)

tions on a prisoner's rights. These restrictions have applied as well where First Amendment values were implicated.

*Jones,* 433 U.S. at 129–30, 97 S.Ct. at 2539–40 [citations omitted]; *see also id.* at 132, 97 S.Ct. at 2541 ("First Amendment associational rights ... likewise must give way to the reasonable considerations of penal management.") Although the alleged First Amendment rights here belong to prison guards, the prudential concerns discussed above are still implicated by allowing the plaintiff to assert those rights. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates *or on prison staff,* courts should be particularly deferential to the informed discretion of corrections officials.") (emphasis added).

The Supreme Court has been careful to set a standard for the protection of prisoners' constitutional rights. The standard is designed to protect those rights not incompatible with a prisoner's status—including the right to petition the government for redress of grievances, protection against racial discrimination, the protection of due process of law, and to a limited extent, the right to exercise the prisoner's own First Amendment rights. When prison regulations encroach upon the rights of a prisoner, the prisoner may bring an action and assert his own rights under 42 U.S.C. § 1983 or 28 U.S.C. § 2254. But I find no authority for extending to a prisoner the right to assert the First Amendment rights of those whose duty it is to restrain and confine him, and, by asserting those rights, mount a challenge to the administration of a prison. I would dismiss the case for lack of standing.

## II. Speech On A Matter of Public Concern.

The defendants below argued that recommendations by guards concerning a particular inmate's suitability for parole were not "speech on a matter of public concern" and could properly be regulated by the DOC. The majority rejects this argument on the grounds that "decisions made by parole boards regarding the release of convicted criminals into society are of great public concern." Clearly, there is great public interest in the criminal justice systems of the states. This does not make any speech in a prison setting relating to parole a matter of "public concern." *See e.g., Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987) ("[T]he mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.") Although the meaning of the phrase "matters of public concern" seems ambiguous at best, *Kurtz v. Vickrey,* 855 F.2d 723, 726 (11th Cir.1988), we are directed to determine whether an employee's speech addresses a matter of public concern by reviewing the "content, form, and context of a given statement." *Connick v. Meyers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Some courts have focused on whether the speech at issue is made primarily in the employee's role as a citizen, or primarily in the role of an employee. *See Kurtz,* 855 F.2d at 727. I think this factor is significant in the instant case, because the evaluation of an inmate's suitability for parole is intrinsically one of the duties of a prison guard. The guard naturally is assigned the task of monitoring the inmate's behavior and evaluating and reporting the inmate's comportment with regard to institutional regulations. As such, I do not see how any evaluation of an inmate that a guard makes can be one other than in the course of the guard's official duties. This is not speech on a matter of public concern; it is speech that is a part of the employee's job performance. When the speech itself is part of the employee's duties, it reflects on the employee's competence to perform his or her job. *Cf. Koch v. City of Hutchinson,* 847 F.2d 1436, 1442 (10th Cir.1988). Considered in context, this speech cannot be divorced from the performance of the employee's duties, and is therefore concerned with internal office functions rather than public concerns. I would dismiss the case

because the speech involved in this case is not a matter of public concern.

### III. The Interests Underlying DOC's Policy.

Even if the speech at issue here is on a matter of public concern, I would find that the DOC's policy is reasonably related to legitimate penological interests and outweighs any right of the guards to make direct recommendations to the Parole Board. Although the defendants did not raise the issue in their motion to dismiss,[4] the magistrate concluded that the DOC's policy "is not justified by important security interests." Mag.Rep. at 6. The magistrate found that the defendants had made no showing that the recommendations could cause disrespect for authority among staff or inmates, or that the recommendations contained confidential information, or that they would be publicized outside of the parole hearing. *Id.*

Given the fact that the majority finds that the plaintiff has standing, the case as it comes before us involves a challenge by a prisoner to an administrative regulation of a prison. As such, we should review the case under the standard of *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), which ensures that administrative decisions of prison officials are accorded appropriate deference by the courts. *Turner* stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. The Supreme Court recently stated:

Our earlier determination to adopt this standard of review was based upon the need to reconcile our longstanding adherence to the principle that inmates retain at least some constitutional rights despite incarceration with the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration. [citing *Turner* and *Jones* ] These two principles apply in all cases in which a prisoner asserts that a prison regulation violates the Constitution, not just those in which the prisoner invokes the First Amendment. We made quite clear that the standard of review adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights.

*Washington v. Harper*, — U.S. —, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).

The policy being challenged by the plaintiff in this case states in part:

[I]ndividual employee recommendations to the Parole Board in behalf of inmates must end. *It not only violates the chain of command, but may in fact compromise individual employees.* Should there ever be the occasion for recommendation other than in the normal parole review process, employees should forward it to the Warden for his endorsement. . . .

The policy shows on its face that one of its purposes is to eliminate the possible compromise of guards. A requirement that parole recommendations pass through the chain of command certainly appears to be a reasonable measure to avoid such a situation. There is clearly a potential for corruption in the relationship between guard and inmate and this potential goes unchecked when a guard is in a position to do favors for an inmate without the knowledge of prison supervisors. *Cf. Brown v. Glines*, 444 U.S. 348, 356, 100 S.Ct. 594, 600, 62 L.Ed.2d 540 (1980) ("Without the opportunity to review materials before they are dispersed throughout his base, a military commander could not avert possible disruptions among his troops") and *Jones*, 433 U.S. at 134, 97 S.Ct. at 2542 ("A prison may be no more easily converted into a

---

**4.** The defendants moved to dismiss the complaint for failure to state a claim. The basis of the motion was that the speech at issue was not related to a matter of public concern and therefore did not violate any First Amendment rights. The magistrate treated the motion as a motion for summary judgment.

Although the defendants did not certify the question of legitimate security interests in the petition for interlocutory appeal, the acceptance of the petition confers broad jurisdiction on this court to review all of the district court's order. *See e.g., Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d 976, 983 n. 16 (5th Cir. 1985) (Appellate court may address all issues material to the order and is not limited to considerations of the "controlling question.")

public forum than a military base.") The magistrate below dismissed any such reasoning, declaring: "Prison staff members simply have nothing to gain or lose from the parole of an inmate, even a 'favorite' inmate...." Mag.Rep. at 4. To say the least, this unfounded conclusion gives no deference whatsoever to the informed discretion of prison officials, nor does it give appropriate recognition to "the peculiar and restrictive circumstances of penal confinement." *Turner*, 482 U.S. at 86, 107 S.Ct. at 2260 (citing *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). Applying the standard of review set forth in *Turner*, I would find that the magistrate erred in requiring a more extensive showing by the defendants as to the need for the regulation of unsupervised parole recommendations. The prison does not have to produce witnesses and documents demonstrating that it has an interest in maintaining discipline and preventing corruption between inmates and guards.[5] *Cf. Jones*, 433 U.S. at 132, 97 S.Ct. at 2541. (The interest in preserving order and authority in the prisons is self-evident; it is enough to say that the prison has not been shown to be wrong in its regulations relating to prison security) and *id.* at 135, 97 S.Ct. at 2543 ("Since a prison is most emphatically not a 'public forum,' [the] reasonable beliefs of appellants are sufficient.... The District Court's further requirement of a demonstrable showing that [a prisoner's union] was in fact harmful is inconsistent with the deference federal courts should pay to the informed discretion of prison officials."). I would find that the DOC's policy, which requires that parole recommendations be submitted to the Warden for his endorsement, is reasonably related to legitimate security interests and is not unconstitutional.

---

**5.** The Supreme Court noted in *Jones* that "[t]he informed discretion of prison officials that there is a potential for danger may be sufficient for limiting rights even though this showing might be 'unimpressive if ... submitted as justification for governmental restriction of personal communication among members of the general public.'" *Jones*, 433 U.S. at 133 n. 9, 97 S.Ct. at 2541 n. 9.