[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 10, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-15186

_____

D. C. Docket No. 01-01830-CV-TWT-1

MAJOR HARDEN,

Plaintiff-Appellant,

versus

GEORGE E. PATAKI, Governor, State of New York,
JACKIE BARRETT, Sheriff, Fulton County, Atlanta,
Georgia, JANE DOE, Employee, Fulton County Jail,
Atlanta, Georgia, JOHN #1 DOE, Agent, Private
Extradition Agency, New York City, JOHN #2 DOE,
Agent, Private Extradition Agency, New York City,
JOHN DOE AGENCY, Private Extradition Agency,
New York City,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 10, 2003)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

BIRCH, Circuit Judge:

In Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372-73 (1994), the Supreme Court "held that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." Edwards v. Balisok, 520 U.S. 641, 643, 117 S. Ct. 1584, 1586 (1997). This case presents the question whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to extradite him from Georgia to New York, otherwise cognizable under § 1983, is barred by Heck. We hold that it is not and, therefore, REVERSE the district court's order dismissing the prisoner's action.

## I. BACKGROUND

In May 1986, while serving a twenty-five year sentence in the Federal Prison in Levenworth, Kansas, Appellant Major Harden was extradited to Suffolk County, New York, and convicted and sentenced to a term of twenty-five years to life for another crime. In his pro se complaint, he alleged that, several days after his release in May 2000 from his later confinement in the Atlanta federal penitentiary on a different crime, he was arrested and, without a signed extradition warrant, a

2

waiver of his extradition rights, or a habeas hearing, and over his protests, extradited to New York by a private extradition company, presumably to serve his sentence imposed pursuant to the 1986 conviction. He filed a federal complaint pursuant to 42 U.S.C. § 1983 in the Southern District of New York, seeking a declaration that the defendants violated his constitutional rights, injunctive relief, and compensatory damages. His case was transferred to the Northern District of Georgia, where the court sua sponte dismissed his suit for failure to state a claim for which relief could be granted pursuant to 28 U.S.C. § 1915A. Applying Heck, the district court found Harden's suit premature because, while his challenge to the extradition procedures necessarily implied the invalidity of his underlying conviction, he had not alleged that his conviction or sentence had in fact been invalidated. This appeal followed.

## II. DISCUSSION

We review a district court's sua sponte dismissal of a suit for failure to state a claim for relief under § 1915A(b)(1) de novo. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (per curiam).

3

In his complaint, Harden alleges that he was denied the right to a pre-extradition habeas corpus hearing, the right to be turned over to government agents, not a private extradition company, and the right to have a Governor's warrant issued for his arrest. The first two rights are based on Art. IV, § 2, cl. 2 of the Constitution ("Extradition Clause")[1] and 18 U.S.C. § 3182[2] implementing the provision, and are therefore federal in nature.[3] Prior to Heck, we held that a cause

---

[1] The Extradition Clause provides: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[2] Section 3182 provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182.

[3] The right to a pretransfer habeas corpus hearing is a federal right first recognized in Roberts v. Reilly, 116 U.S. 80, 94-95, 6 S. Ct. 291, 299 (1885). That the right to be turned over only to government agents is federal is far less clear, but we find it at least arguable in the language of 18 U.S.C. § 3182, when it refers to "the agent of [the executive authority of the demanding state] appointed to receive the fugitive," where, as here, there is some basis to conclude that private extradition services are not authorized under the law of the demanding state. See Off. Att'y Gen., New York, Informal Op. No. 90-18 (March 19, 1990).

of action under § 1983 is stated where officials violate extradition procedures protected "by the Constitution and laws of the United States." Crumley v. Snead, 620 F.2d 481, 483 & n.9 (5th Cir. 1980). In that case, the sheriff of one state delivered the prisoner to authorities in another state while the prisoner's petition for a writ of habeas corpus collaterally challenging the extradition was pending in state court. Id. at 482. Recognizing "that individuals have a federal right to challenge their extradition by writ of habeas corpus," we specifically held that "[a]ny denial of th[at] right gives rise to a cause of action under 42 U.S.C. s 1983." Id. at 483. The majority of circuit courts agree.[4]

The right to a signed Governor's warrant of arrest, however, is based on the Uniform Criminal Extradition Act ("UCEA") as it has been adopted and codified in state law, not on the Extradition Clause or § 3182 explicitly. See Ga. Code Ann. § 17-13-27 (1997). As we have not held so before, today, we join our five sister "circuits that have held that a violation of state extradition law can serve as the basis of a section 1983 action '[w]here the violation of state law causes the

---

[4] See, e.g., Draper v. Coombs, 792 F.2d 915, 919 (9th Cir. 1986); Ross v. Meagan, 638 F.2d 646, 649-50 & n.4 (3d Cir. 1981) (per curiam); Brown v. Nutsch, 619 F.2d 758, 764 (8th Cir. 1980); McBride v. Soos, 594 F.2d 610, 613 (7th Cir. 1979); Wirth v. Surles, 562 F.2d 319, 323 (4th Cir. 1977); Sanders v. Conine, 506 F.2d 530, 532 (10th Cir. 1974); but see Barton v. Norrod, 106 F.3d 1289, 1295 (6th Cir. 1997) (holding that, since "the constitutional and statutory extradition provisions are not designed to protect fugitives[, but r]ather . . . are designed to facilitate the administration of justice between states[, the] failure to comply with established procedures does not deprive the fugitive of any protected right" and, therefore, provides no basis for a § 1983 claim).

5

deprivation of rights protected by the Constitution and statutes of the United States.'" Draper v. Coombs, 792 F.2d 915, 921 (9th Cir. 1986) (quoting Wirth v. Surles, 562 F.2d 319, 322 (4th Cir. 1977)); accord Brown v. Nutsch, 619 F.2d 758, 764 n.8 (8th Cir. 1980); McBride v. Soos, 594 F.2d 610, 613 (7th Cir. 1979); Sanders v. Conine, 506 F.2d 530, 532 (10th Cir. 1974).[5]  Thus, we find that, in the absence of any bar imposed by Heck, Harden properly stated a § 1983 damages claim for failure to comply with both federal and state extradition laws.[6]

_____

[5]  The Supreme Court has also suggested as much.  In Cuyler v. Adams, 449 U.S. 433, 101 S. Ct. 703 (1981), the Court concluded that a prisoner transferred involuntarily under Article IV of the Interstate Agreement on Detainers is "entitled to whatever 'safeguards of the extradition process' he might otherwise have enjoyed . . . [under] the [UCEA] (in those States that have adopted it), as well as any other procedural protections the sending State guarantees persons being extradited from within its borders."  Id. at 448, 450, 101 S. Ct. at 711-12.  Because the prisoner alleged that state officials had transferred him to another jurisdiction pursuant to Article IV without granting him a pretransfer hearing to which he would have been entitled had he been transferred under the UCEA, the Court held that he had adequately stated a § 1983 claim.  Id. at 436-37, 450, 101 S. Ct. at 706, 712.  This at least suggests that an alleged violation of the procedural protections afforded a person to be extradited pursuant to the UCEA would also state a cause of action under § 1983.  Even if a signed Governor's warrant does not state a cause of action under § 1983 merely because it is required by the UCEA, we find that it does so because it is derived from the language and intent of 18 U.S.C. § 3182.  Section 3182 requires that the "executive authority" of the asylum state "shall cause" the fugitive "to be arrested and secured."  Because Congress could not have intended that a state executive would violate his or her own state law on lawful arrests, and because Georgia requires a Governor's warrant before arresting a person to be extradited, see Ga. Code Ann. § 17-13-27, we find that Harden has stated a cause of action on this ground.

[6]  We find that any claim for injunctive relief is precluded by Preiser v. Rodriguez, 411 U.S. 475, 93 S. Ct. 1827 (1973).  There, the Court considered a § 1983 action brought by state prisoners, alleging that prison officials had unconstitutionally deprived them of "good-conduct-time credits," and seeking "injunctive relief to compel restoration of the credits, which in each case would result in their immediate release from confinement in prison."  Id. at 476-77, 93 S. Ct. at 1829.  The Court held "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500, 93 S. Ct. at 1841.  Because non-prospective injunctive relief in the case of

6

In Heck, however, the Court considered a state prisoner's § 1983 claim arising out of alleged unlawful acts by state prosecutors and police officers that had led to his arrest and conviction. 512 U.S. at 479, 114 S. Ct. at 2368. It held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 489-90, 114 S. Ct. at 2374. The Court reasoned that, because "§ 1983 creates a species of tort liability," "the appropriate starting point for the inquiry under § 1983" is the common law rules of tort. Id. at 483, 114 S. Ct. at 2370-71. Recognizing that "[t]he common-law cause of action for malicious prosecution provides the closest analogy to" Heck's § 1983 claim, and that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused," the Court imposed a favorable-termination requirement on "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." Id. at 484, 486, 114 S. Ct. at 2371, 2372. In doing so, it invoked "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486, 114 S. Ct. at 2372.

---

procedural violations during extradition could only mean immediate release from confinement, Harden's prayer in this regard is foreclosed by Preiser.

7

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87, 114 S. Ct. at 2372 (footnote omitted). Though cognizant that the case lay "at the intersection of the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871 . . . , as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254," id. at 480, 114 S. Ct. at 2369, the Court was careful to emphasize that it did "not engraft an exhaustion requirement upon § 1983 [because of the habeas statute], but rather den[ied] the existence of a cause of action" altogether. Id. at 489, 114 S. Ct. at 2373.

In short, the Court held "that a state prisoner may not maintain an action under 42 U.S.C. § 1983 if the direct or indirect effect of granting relief would be to

invalidate the state sentence he is serving."[7] Spencer v. Kemna, 523 U.S. 1, 21, 118 S. Ct. 978, 990 (1998) (Ginsburg, J., concurring). By contrast, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."[8] Heck, 512 U.S. at 487, 114 S. Ct. at 2372-73 (footnote omitted). "If, for example, [a plaintiff] were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' and if that procedural defect did not 'necessarily imply the invalidity of' the [conviction or sentence], then *Heck* would have no application at all." Spencer, 523 U.S. at 17, 118 S. Ct. at 988 (citations omitted). Thus, Heck does not bar purely procedural claims brought under § 1983.[9]

---

[7] One example of a damages claim for an alleged violation that would be *indirectly* invalidating, or what the Court in Heck calls "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," 512 U.S. at 486, 114 S. Ct. at 2372, is one alleging an unreasonable seizure in violation of the Fourth Amendment by a police officer when arresting the prisoner for resisting arrest. Id. at 486 n.6, 114 S. Ct. at 2372 n.6. Because "the crime of resisting arrest [is] defined as intentionally preventing a peace officer from effecting a *lawful* arrest," a claim of unreasonable seizure, or unlawful arrest, if successful, would necessarily, though indirectly, invalidate the underlying conviction for resisting arrest. Id.

[8] "For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." Heck, 512 U.S. at 487 n.7, 114 S. Ct. at 2372 n.7 (citations omitted); see also Datz v. Kilgore, 51 F.3d 252, 253 n.1 (11th Cir. 1995) (per curiam).

[9] The difference between a purely procedural claim cognizable under § 1983 and a procedural claim where "the nature of the challenge to the procedures could be such as necessarily to imply

The question here, then, is whether Harden's damages claim challenging the validity of the procedures used to extradite him is purely procedural, or whether, if successful, it would necessarily invalidate the underlying conviction or sentence for which he was extradited, directly or indirectly. We hold that it does not; indeed, it cannot.

---

the invalidity of the judgment," not cognizable under § 1983, Edwards, 520 U.S. at 645, 117 S. Ct. at 1587, is demonstrated by the contrary holdings in Edwards and Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974). In the latter, the Court held that prison disciplinary procedures violated due process if they did not provide for "advance written notice of the claimed" misconduct resulting in discipline or "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." Id. at 563, 94 S. Ct. at 2978. The Court in Heck distinguished Wolff because the damages sought were "for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedures," Wolff, 418 U.S. at 553, 94 S. Ct. at 2973, and not for deprivation of good-time credits. Heck, 512 U.S. at 482, 114 S. Ct. at 2370. In essence, the claim was "for using the wrong procedures, not for reaching the wrong result (*i.e.,* denying good-time credits). Nor is there any indication in the opinion, or any reason to believe, that using the wrong procedures necessarily vitiated the denial of good-time credits. Thus, the claim at issue in *Wolff* did *not* call into question the lawfulness of the plaintiff's continuing confinement." Id. at 482-83, 114 S. Ct. at 2370. In Edwards, as in Wolff, the "complaint[] limited [the plaintiff's] request to damages for depriving him of good-time credits *without due process*, not for depriving him of good-time credits *undeservedly* as a substantive matter. That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was." 520 U.S. at 645, 117 S. Ct. at 1587. However, in Edwards, unlike in Wolff, "[t]he principal procedural defect complained of [—"the deceit and bias of the hearing officer"—] would, if established, necessarily imply the invalidity of the deprivation of [the] good-time credits," which would inevitably invalidate the prisoner's sentence by challenging the duration of his confinement. Id. at 646, 647, 117 S. Ct. at 1588. Thus, claims brought by state prisoners are not cognizable under § 1983 if they necessarily invalidate, directly or indirectly, an underlying criminal conviction or period of confinement, even if they allege only procedural violations and seek damages only for the procedural violation and not for the substantive result. Only if such claims are purely procedural, as in Wolff, where the alleged procedural defects—lack of advance written notice of the charges and a written statement of the basis of the decision—or the outcome of the action, would not necessarily invalidate an underlying conviction or sentence, will they be cognizable under § 1983. See e.g., Jenkins v. Haubert, 179 F.3d 19, 21 (2d Cir. 1999) (holding that Heck and Edwards do not bar a prisoner's § 1983 claim alleging bias by the prison's hearing officer in a disciplinary proceeding affecting only the conditions, but not the fact or duration, of confinement).

10

In the first instance, the jurisdiction of a trial court over a criminal defendant is not vitiated by the violation of extradition procedures.  Lascelles v. Georgia, 148 U.S. 537, 544, 13 S. Ct. 687, 690 (1893) ("The jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it.").  In Ker v. Illinois, 119 U.S. 436, 440, 7 S. Ct. 225, 227 (1886), the Court concluded that "for mere irregularities in the manner in which [a criminal defendant] may be brought into custody of the law, we do not think he is entitled to say that he should not be tried at all for the crime with which he is charged."

> [W]hen the governor of one state voluntarily surrenders a fugitive from the justice of another state to answer for his alleged offenses, it is hardly a proper subject of inquiry on the trial of the case to examine into the details of the proceedings by which the demand was made by the one state, and the manner in which it was responded to by the other.

Id. at 441, 7 S. Ct. at 228.

> [The] Court has never departed from the rule . . . that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'  . . .  [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards.  There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

11

Frisbie v. Collins, 342 U.S. 519, 522, 72 S. Ct. 509, 511-12 (1952) (footnote omitted).

We, too, adhere to this doctrine "unequivocally established in *United States v. Winter*, 509 F.2d 975 (5th Cir. [1975])." United States v. Darby, 744 F.2d 1508, 1530 (11th Cir. 1984). "[W]e are convinced that . . . a defendant in a federal criminal trial whether citizen or alien, whether arrested within or beyond the territory of the United States may not successfully challenge the District Court's jurisdiction over his person on the grounds that his presence before the Court was unlawfully secured. . . . [T]he Supreme Court has not receded from Ker or Frisbie, and neither has this Court." Winter, 509 F.2d at 985-87 (footnotes omitted); see also Remeta v. Singletary, 85 F.3d 513, 518-19 (11th Cir. 1996) (holding that denying a pretransfer hearing to a defendant extradited under the Interstate Agreement on Detainers in the absence of a waiver "did not deprive [the demanding state] of jurisdiction to try him for murder").

Moreover, extradition *procedures*, even if they violate federal rights, have no bearing, direct or implied, on the underlying guilt or innocence of the person extradited. See In re Strauss, 197 U.S. 324, 333, 25 S. Ct. 535, 537 (1905) ("[T]he process of extradition . . . is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of

12

guilt."). Neither do the extradition *decisions* of asylum states. See Michigan v. Doran, 439 U.S. 282, 290, 99 S. Ct. 530, 536 (1978) ("[W]hen a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination."). "Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language . . . of the Constitution," which "served important national objectives of a newly developing country striving to foster national unity" by "preclud[ing] any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." Id. at 287-88, 99 S. Ct. at 534-55.

> [Thus, o]nce the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

Id. at 289, 99 S. Ct. at 535. Indeed, the UCEA, as codified in Georgia, precludes inquiry into "[t]he guilt or innocence of the accused as to the crime of which he is charged . . . by the Governor or in any proceeding after the demand for extradition . . . , except as it may be involved in identifying the person held as the person charged with the crime." Ga. Code Ann. § 17-13-40.

13

If the asylum state has no power to question the probable cause determination of the demanding state or the guilt or innocence of the defendant, except as it relates to his or her identity, such that an entirely innocent person may be properly extradited, then the converse must also be true: improper extradition by the asylum state in violation of those rights cannot impugn the probable cause determination of the demanding state or the subsequent adjudication of guilt of the person extradited. Whether the person was convicted or sentenced after the extradition or, as here, before, is inconsequential.[10]

---

[10] It could be argued that Heck bars a § 1983 damages claim if the alleged violation of extradition procedures necessarily implies the invalidity of the extradition decision itself, not necessarily the underlying conviction or sentence. We find this implausible. First, the reason for imposing the favorable-termination requirement in Heck, as it was in malicious prosecution actions at common law, was to "avoid[] parallel litigation" and preclude inconsistent judicial results, "in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction," in accordance with the Court's "long expressed . . . concerns for finality and consistency" of judicial decisions. 512 U.S. at 484-85, 114 S. Ct. at 2371. Under section 10 of the UCEA, codified at Ga. Code Ann. § 17-13-30, the person to be extradited is entitled to an initial hearing "before a judge of a court of record in th[e asylum state], who shall inform him of the demand made for his surrender, of the crime with which he is charged, and that he has the right to demand and procure legal counsel." However, "[t]he person being extradited has no right to challenge the facts surrounding the underlying crime or the lodging of the custody request at th[is] first hearing." Cuyler, 449 U.S. at 443 n.11, 101 S. Ct. at 709 n.11. Also, "[a] governor's grant of extradition is [merely] prima facie evidence that the constitutional and statutory requirements have been met" and is not, therefore, a judgment. Doran, 439 U.S. at 289, 99 S. Ct. at 535. Thus, where the extradited person is not afforded his federal right to challenge the extradition by a writ of habeas corpus, there is no parallel litigation on, and there can be no inconsistent judicial results from, the extradition decision itself. Second, it cannot be true that Heck stands for the broad proposition that any damages claim that necessarily invalidates a prior substantive adjudication is not cognizable under § 1983. If that were the case, Heck would have, in one fell swoop, barred virtually any § 1983 claim alleging constitutional violations occurring in prior judicial proceedings, including many substantive and procedural due process violations. Moreover, the opinion in Heck made clear that the favorable-termination requirement was being imposed in reliance on "the hoary

14

Thus, we find that the violations of extradition procedures alleged in this case—the failure to provide a habeas corpus hearing or a signed Governor's warrant, and release into the hands of a private extradition agency—in no way relate to Harden's guilt or innocence and therefore do not impugn his conviction or sentence.

There is a second reason to conclude that <u>Heck</u> does not bar most § 1983 damages claims based on improper extradition. In both <u>Heck</u> and <u>Edwards</u>, the Court was careful to emphasize that its holding did not impose an exhaustion requirement on § 1983 actions that would require a prisoner to first petition for a writ of habeas corpus under 18 U.S.C. § 2254, thus suggesting that the bar would apply even where habeas corpus review is unavailable. See <u>Heck</u>, 512 U.S. at 483, 489, 114 S. Ct. at 2370, 2373; <u>Edwards</u>, 520 U.S. at 649, 117 S. Ct. at 1589. Justice Souter, by contrast, concurred in the judgment "because it was a 'simple way to avoid collisions at the intersection of habeas and § 1983.'" <u>Spencer</u>, 523 U.S. at 20, 118 S. Ct. at 989 (Souter, J., concurring) (citation omitted). Thus, in his concurring opinion in <u>Spencer</u>, joined by Justices O'Connor, Ginsburg, and Breyer, he explained that <u>Heck</u> should be read as permitting a prisoner to "bring a § 1983 action establishing the unconstitutionality of a conviction or confinement

_____

principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding *criminal* judgments." 512 U.S. at 486, 114 S. Ct. at 2372 (emphasis added).

without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy" because a habeas claim would be unavailable under the circumstances, for instance, to a prisoner who was released while his or her petition was pending. Id. at 21, 118 S. Ct. at 990. Otherwise, Heck would "deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling." Heck, 512 U.S. at 500, 114 S. Ct. at 2379 (Souter, J., concurring). In her separate concurring opinion, Justice Ginsburg indicated that she had come to agree with Justice Souter's reasoning: "Individuals without recourse to the habeas statute because they are not 'in custody' . . . fit within § 1983's 'broad reach.'" Spencer, 523 U.S. at 21, 118 S. Ct. at 990. In his dissent, Justice Stevens added that, "[g]iven the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear . . . that he may bring an action under 42 U.S.C. § 1983." Id. at 25 n.8, 118 S. Ct. at 992 n.8. Thus, "five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." Jenkins v. Haubert, 179 F.3d 19, 26 (2d Cir. 1999).

In the case of extradition, "[o]nce a fugitive has been brought within custody of the demanding state, legality of extradition is no longer proper subject of any legal attack by him." Siegel v. Edwards, 566 F.2d 958, 960 (5th Cir. 1978) (per

16

curiam).[11] Specifically, "a person forcibly abducted from one state without warrant or authority of law and placed in the demanding state's custody does not have a claim for release in habeas corpus." Johnson v. Buie, 312 F. Supp. 1349, 1351 (W.D. Mo. 1970) (cited with approval in Siegel, 566 F.2d at 960). "Once the fugitive is returned to the demanding state, the right to challenge extradition becomes moot: the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer at issue." Barton v. Norrod, 106 F.3d 1289, 1298 (6th Cir. 1997). Thus, because federal habeas corpus is not available to a person extradited in violation of his or her federally protected rights, even where the extradition itself was illegal, § 1983 must be. If it were not, a claim for relief brought by a person already extradited would be placed beyond the scope of § 1983, when exactly the same claim could be redressed if brought by a person to be, but not yet, extradited. See Spencer, 523 U.S. at 20-21, 118 S. Ct. at 989 (Souter, J., concurring) (explaining a similar disparity in the case of a habeas petition made moot by the prisoner's subsequent release).

---

[11] While the "legality of extradition" may be not be contested, our holding did not intend to preclude appropriate § 1983 actions challenging alleged violations of federal rights during extradition, whether or not the extradition itself was legal. See Crumley, 620 F.2d at 483 (recognizing a cause of action under § 1983 for failure to provide an opportunity to challenge an extradition by writ of habeas corpus).

Furthermore, we disagree with the Seventh Circuit's analysis—the only other circuit court to have addressed this issue in a published opinion. In Knowlin v. Thompson, 207 F.3d 907, 907, 908 (7th Cir. 2000), a state prisoner filed a § 1983 damages action against Arkansas law enforcement officers for allegedly violating the UCEA by extraditing him to Wisconsin before a hearing could be held on his habeas petition. Though recognizing its prior holding in McBride, 594 F.2d at 613, that such conduct states a cause of action under § 1983, the court nevertheless affirmed the district court's dismissal of the case as barred by Heck. Id. at 908-09.

The court's analysis began, like Heck's, by analogizing the § 1983 claim to the tort of malicious prosecution. Id. at 909. Because of this, "Knowlin cannot prevail in his claim based on the denial of an opportunity to test the facial validity of the extradition demand through habeas proceedings absent a showing that he was not, in fact, extraditable through proper procedures." Id. In other words, "Knowlin will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA. That showing, in turn, would necessarily imply the invalidity of his Wisconsin parole revocation, which Heck instructs cannot be shown through a § 1983 suit. Heck therefore bars the instant suit." Id.

18

The court's reasoning, though syllogistic, is fundamentally flawed. First, the court concludes that, because the tort of malicious prosecution provides the closest analogy to his claim, Knowlin must prove that he was otherwise extraditable, without explaining its minor premise, that is, why the conclusion inevitably follows from the first principle.[12] If it is because of the favorable-termination requirement in that tort, the opinion seems to treat the requirement as a *cause* of the further requirement that Knowlin prove he is not otherwise extraditable. Under Heck, however, the malicious prosecution analogy, and therefore the favorable-termination requirement, apply only as a *consequence* of the claim's direct or indirect substantive challenge, say, for example, to extradition on the ground that the plaintiff was innocent of the underlying charges and therefore not extraditable. See 512 U.S. at 486-87, 114 S. Ct. at 2373. Yet, Knowlin apparently applies the requirement across the board: "It is irrelevant that Knowlin, in his complaint, alleges only that the defendants denied him a procedure guaranteed by federal law; he does not allege that he was innocent of the charges in the demanding state or was otherwise not extraditable." 207 F.3d at 909. Even if the requirement were to sweep so broadly, the result would not be a requirement that Knowlin show that he

---

[12] The opinion is far from a model of clarity.

was not extraditable, but rather that the underlying judgment was invalidated, expunged or reversed.[13]

Second, irrespective of the analogy to the malicious prosecution tort, a showing that the plaintiff was not extraditable, and that, had a pretransfer hearing been held, he or she would not have been extradited, is not required to recover damages in a § 1983 action alleging violation of extradition procedures. In <u>Carey v. Piphus</u>, 435 U.S. 247, 98 S. Ct. 1042 (1978), the Court did conclude that an "injury caused by a *justified* deprivation, including distress, is not properly compensable under § 1983." <u>Id.</u> at 260, 263, 98 S. Ct. at 1050, 1052 (emphasis added). The Court did not, however, foreclose damages for injuries associated with the denial of procedural due process itself, though it refused to presume them. <u>Id.</u> at 264, 98 S. Ct. at 1052. Accordingly, we agree with the Tenth Circuit's conclusion that, if "the extradition itself was justified, even though the procedures used to accomplish it were deficient . . . , [a] plaintiff cannot recover for any injury

_____

[13]  If, on the other hand, the court applied the requirement in a tort action for malicious prosecution that the plaintiff show an absence of probable cause for the proceeding to reach the conclusion that Knowlin must prove that he was not otherwise extraditable, we agree with Justice Souter in <u>Heck</u> that doing so would also require application of the tort's malice requirement, which § 1983 does not require. <u>Heck</u>, 512 U.S. at 493-94, 114 S. Ct. at 2376 (Souter, J., concurring). It also "would mean that even a § 1983 plaintiff whose conviction was invalidated as unconstitutional . . . could not obtain damages for the unconstitutional conviction and ensuing confinement if the defendant police officials (or perhaps the prosecutor) had probable cause to believe the plaintiff was guilty and intended to bring him to justice," something <u>Heck</u> does not hold. <u>Id.</u> at 494, 114 S. Ct. at 2376 (Souter, J., concurring).

20

caused by the extradition; he can [however] recover for any injury, such as emotional distress, caused by the deprivation of due process itself." Long v. Shillinger, 927 F.2d 525, 528 (10th Cir. 1991); see also Draper, 792 F.2d at 921 (concluding that "dismiss[ing prisoner's § 1983 claim based on unlawful extradition] on the ground that he was ultimately convicted of the crime involved and, therefore, suffered no 'actual' damage . . . is simply incorrect").[14]

Even if Harden's extradition was justified, and even if he cannot show actual injury from the procedural violations, he still may be entitled to nominal damages. See Carey, 435 U.S. at 266, 98 S. Ct. at 1053. "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, . . . the denial of procedural due process [is] actionable for nominal damages without proof of actual injury."[15] Id.

_____

[14] We have held that "[e]motional injury is actionable under section 1983 for humiliation, embarrassment, and mental distress resulting from the deprivation of a constitutional right." Hewett v. Jarrard, 786 F.2d 1080, 1088 (11th Cir. 1986); accord Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam) (finding that awarding $500 to prisoner as compensatory damages for emotional distress resulting from a procedural due process violation was not clearly erroneous). In fact, "[p]unitive damages may be awarded in a § 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated." Dykes v. Hosemann, 743 F.2d 1488, 1500 (11th Cir. 1984). While injuries must be specific, "real injury can [even] be inferred from the facts." Hewett, 786 F.2d at 1088.

[15] "For purposes of *Piphus* it does not matter whether the underlying claim involves a deprivation of a procedural or substantive constitutionally-based right" such as those provided in the Extradition Clause and implementing statutes. Draper, 792 F.2d at 921. As the Seventh Circuit itself has noted, the extradition statute is similarly absolute: "'The statute is one

21

at 266, 98 S. Ct. at 1054 (citations omitted); accord Caban-Wheeler v. Elsea, 71 F.3d 837, 841 (11th Cir. 1996). Thus, Harden may be able to recover nominal, compensatory, and even punitive damages for the constitutional and statutory violations he is able to prove, whether or not the extradition itself was otherwise justified.[16]

Finally, the opinion in Knowlin incorrectly concludes that proving unjustified extradition "would necessarily imply the invalidity of [Knowlin's] Wisconsin parole revocation, which *Heck* instructs cannot be shown through a § 1983 suit."[17] 207 F.3d at 909. Any successful showing by Harden that, had he been afforded a habeas corpus hearing, he would not have been extradited, even if he were required to prove this—which we conclude he was not—would not necessarily imply the invalidity of his underlying conviction or sentence and, therefore, would not be barred by Heck.[18]

---

involving the substantial rights of citizens, and its essential elements must be strictly followed . . . Only by faithfully following the provisions of the statute may a person be lawfully deprived of his liberty and extradited from an asylum state to another state, there to be tried for the commission of a crime.'" McBride, 594 F.2d at 612 (quoting United States v. Meyering, 75 F.2d 716, 717 (7th Cir. 1935)).

[16] Of course, "actual, compensable injury . . . does *not* encompass the 'injury' of being convicted and imprisoned." Heck, 512 U.S. at 487 n.7, 114 S. Ct. at 2372 n.7.

[17] The opinion also fails to mention that this is true only if the prisoner cannot show that the revocation was invalidated, reversed or expunged.

[18] As previously noted, an extradition request can only be challenged in an asylum state court habeas corpus hearing on four grounds. See infra p. 13. Demonstrating the facial invalidity of

## III. CONCLUSION

We hold that a claim filed pursuant to 42 U.S.C. § 1983 seeking damages and declaratory relief for the violation of a state prisoner's federally protected extradition rights is not automatically barred by <u>Heck</u>. We also hold that such a claim is not barred by <u>Heck</u>, where the specific allegations are that law enforcement officials failed to provide an extradited prisoner with a pretransfer habeas corpus hearing or a signed warrant by the governor of the asylum state, or released him into the hands of a private extradition service instead of government agents. Accordingly, we find that the dismissal of the action by the district court was incorrect and remand for further proceedings. **REVERSED AND REMANDED.**

---

the extradition papers or that the petitioner is not a fugitive, clearly, does not invalidate a subsequent conviction. Showing that the person to be extradited has not been charged with a crime in the demanding state also does not undermine a subsequent conviction, so long as the person was properly charged in accordance with that state's rules of criminal procedure once returned. Similarly, showing that the extradited person was not the person named in the request for extradition does not necessarily invalidate a subsequent conviction. First, the conviction may be for another offense of which the extradited person was guilty. <u>See</u> <u>Lascelles</u>, 148 U.S. at 547, 13 S. Ct. at 691 (holding that, upon return to the demanding state, a fugitive "may be tried . . . for any other offense than that specified in the requisition for his rendition"). Second, the error may have been merely a scrivener's error. If, however, the wrong person was ultimately convicted, or the person was convicted without ever having been properly charged, a § 1983 action brought on these grounds would amount to a direct challenge to the conviction, not the extradition itself, to which the <u>Heck</u> rule would apply.