[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2007
THOMAS K. KAHN
CLERK

No. 07-10629
Non-Argument Calendar
_____

D. C. Docket No. 05-02462-CV-TCB-1

WILLIAM M. TAYLOR,

Plaintiff-Appellant,

versus

MILTON E. NIX, JR.,
Chairman, State Board of Pardons and Paroles,
GARLAND R. HUNT,
Vice-Chairman,
GARDFIELD HAMMONDS, JR.,
EUGENE P. WALKER,
L. GALE BUCKNER,
Members,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 27, 2007)**

Before DUBINA, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Appellant William Taylor ("Taylor"), a Georgia state prisoner, appeals *pro se* the district court's dismissal, pursuant to 28 U.S.C. § 1915A, of his substantive due process claim, as well as the district court's order granting summary judgment for the five named members of the Georgia State Board of Pardons and Paroles ("Board") on the remaining claims asserted in his second amended complaint. Taylor also appeals the district court's denial of his motion to compel the discovery of certain privileged documents, and its failure to exercise its equitable powers to force the Board to grant him parole. After reviewing the record and reading the parties' briefs, we affirm the judgment of dismissal.

## I. Substantive Due Process Claim

"We review a district court's *sua sponte* dismissal of a [claim] for failure to state a claim for relief under § 1915A(b)(1) *de novo*." *Harden v. Pataki*, 320 F.3d 1289, 1292 (11th Cir. 2003). *Pro se* briefs, such as Taylor's appellate brief, are entitled to liberal construction. *Cofield v. Ala. Public Serv. Comm'n*, 936 F.2d 512, 514 n.2 (11th Cir. 1991).

The Prison Litigation Reform Act of 1995 ("PLRA") requires a district court to screen prisoner civil rights actions. 28 U.S.C. § 1915A(a). A district court must "review, before docketing, if feasible or, in any event, as soon as practicable after

2

docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *Id.* A district court must dismiss the claim if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. 1915A(b)(1).

In this case, the district court dismissed Taylor's due process claim for failure to state a claim upon which relief could be granted. A complaint fails to state a claim upon which relief may be granted when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1022 (11th Cir. 2001) (citation omitted).

Section 1983 does not create any substantive rights. *Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997). "[I]t merely provides a remedy for deprivations of federal statutory and constitutional rights." *Id.* To sustain a cause of action under § 1983, a plaintiff must prove that he was deprived of a federal right by a person acting under color of state law. *Griffin v. City of Opa- Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The substantive component of the Due Process Clause protects

those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (citations omitted). "Substantive due process rights are created by the Constitution, and 'no amount of process can justify [their] infringement.'" *Id.* (citation omitted). In order to have a substantive due process claim, Taylor must have a substantive right created by the Constitution.

In analyzing a substantive due process claim, a court must initially craft a "'careful description of the asserted right.'" *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005) (citations omitted). Second, a court "must determine whether the asserted right is one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (citations and internal quotation marks omitted).

"[T]here is no federal constitutional right to parole." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979)).

"[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office*,

4

329 F.3d 1300, 1305 (11th Cir. 2003). "'[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Id.* (citation omitted).

After reviewing the record, we conclude that the district court did not err in dismissing Taylor's substantive due process claim.

Liberally construing his appellate brief, Taylor alleges that but for the Board's arbitrary and capricious actions he would have been paroled. Taylor, however, cites no caselaw holding that a life-sentenced prisoner has a right to parole, and, to the contrary, there is no federal constitutional right to parole. *See Jones*, 279 F.3d at 946. He also cites no caselaw recognizing a substantive due process violation in a failure to follow certain procedures in considering a parole request. Accordingly, Taylor did not assert a cognizable substantive due process claim in his first complaint, and we conclude that the district court properly dismissed it.[1]

Also, to the extent that Taylor's appellate brief may be liberally construed to allege that the district court erred in failing to rule on his motion for

---

[1] Taylor did not argue before the district court and, even liberally construing his appellate brief, does not argue on appeal that the Board violated his due process rights by relying on erroneous or improper documents in his clemency file in denying him parole. *Cf. Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991). Therefore, Taylor has waived any error with respect to this issue. *See United States v. Silvestri*, 409 F.3d 1311, 1338 n.18 (11th Cir.), *cert. denied*, 126 S. Ct. 772 (2005).

reconsideration of the dismissal of his due process claim, such an argument is without merit. The district court did rule on this motion, concluding that it was moot because Taylor filed a second amended complaint – which did not include a substantive due process claim – before it could rule on the merits of his motion for reconsideration.

## II. *Denial of Motion to Compel*

We review the denial of a plaintiff's motion to compel discovery for an abuse of discretion. *Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 826 (11th Cir. 2000).

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b) (emphasis added).

Under Georgia law, "[a]ll information, both oral and written, received by the members of the board in the performance of their duties under this chapter and all records, papers, and documents coming into their possession by reason of the performance of their duties under this chapter shall be classified as confidential state secrets until declassified by a resolution of the board passed at a duly constituted session of the board." O.C.G.A. § 42-9-53(b).

The record demonstrates that the district court, after reviewing the contested

documents *in camera*, explicitly found that they were subject to the confidential

state secrets privilege. Rather than challenging this ruling on appeal, however,

Taylor exclusively argues in his appellate brief that he was entitled to the

documents because they were relevant to his retaliation claim. By virtue of this,

we conclude that Taylor has waived any error with respect to the district court's

finding that the privilege applied.[2] *See Silvestri*, 409 F.3d at 1338 n.18. Thus, even

assuming *arguendo* that the documents were relevant to one or more of his claims,

they were still subject to the confidential state secrets privilege and, therefore, were

not discoverable pursuant to Fed.R.Civ.P. 26(b).[3]

### III. Ex Post Facto Claim

We review *de novo* a district court's grant of summary judgment. *Twin City

Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc.*, 480 F.3d 1254, 1258 (11th Cir.

2007). Similarly, "[w]e review *de novo* the district court's interpretation and

application of the statute of limitations." *Brown v. Georgia Bd. of Pardons &*

---

[2] Although Taylor argued before the district court that the Board waived this privilege by including some of the documents in its summary judgment brief, he does not present any such argument on appeal, nor does he cite to any decisions involving waiver of a privilege. Consequently, Taylor has abandoned his waiver claim on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

[3] We also conclude that Taylor's alternative argument, that the Board only produced six of the contested documents and withheld other documents, is unsupported by the record. The Board produced more than six documents for the district court's *in camera* review, and there is nothing in the record to suggest that the Board withheld any other documents that were found in Taylor's clemency file.

7

*Paroles*, 335 F.3d 1259, 1261 n.2 (11th Cir. 2003).

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court "should view the evidence and any inferences that may be drawn in the light most favorable to the non-moving party." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.), *cert. denied*, 127 S. Ct. 516 (2006).

"'Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983.'" *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (citation omitted). Georgia's statute of limitations for personal injury actions, and, thus, the statute of limitations for a § 1983 claim arising out of events occurring in that state, is two years. *Id.*

"Federal law determines when the statute of limitations begins to run." *Lovett*, 327 F.3d at 1182. The statute of limitations ordinarily "'does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Id.* (citation omitted).

"'The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the

8

present, which does.'" *Lovett*, 327 F.3d at 1183 (citation omitted).

In *Lovett*, we addressed a similar claim that the Georgia Board of Pardons and Paroles's decision to delay an inmate's parole hearing, pursuant to a newly implemented Board policy, constituted a continuing violation of his constitutional rights against *Ex Post Facto* laws. *Id.* We ultimately concluded that the decision not to consider an inmate for parole again until 2006 "was a one time act with continued consequences, and the limitations period is not extended." *Id.*

Following *Lovett*, we determined that an inmate could not rely on the continuing violation doctrine to save his *ex post facto* claim, where he had been notified in 1995 of a new Board policy allowing a parole reconsideration set-off for up to eight years, but had waited until 2002 to file his lawsuit, even though the Board had denied him parole as recently as 2001. *See Brown* 335 F.3d at 1261.

We also rejected the argument that each setting of a parole hearing constituted a distinct and separate injury, holding:

> Each time Brown's parole reconsideration hearing is set, it does not amount to a distinct and separate injury. *See*, *e.g.*, *Smith v. Grubbs*, 42 Fed.Appx. 370, 371 (10th Cir. 2002) (unpublished). Rather, Brown's injury, to the extent it ever existed, was when the Georgia Parole Board applied its new policy, eliminating the requirement of parole review every three years for Brown, retroactively. *It is the decision in 1995 that forms a potential basis for Brown's claim. It was also at this point that Brown could have discovered the factual predicate of his claim*. The successive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of-limitations

9

calculations.

*Id.* at 1261-62 (emphasis added).

Taylor initially learned in 1996 that the Board had implemented a new policy requiring that life-sentenced offenders, like himself, would be reviewed for parole at least once every eight years, and not on an annual basis.[4] Taylor, however, did not file his complaint until 2005, more than two years later. Thus, his *ex post facto* claim was untimely, and the continuing violation doctrine cannot save it.[5] *See Lovett*, 327 F.3d at 1183; *Brown*, 335 F.3d at 1261.

### IV. Retaliation Claim[6]

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "A prisoner can establish retaliation by demonstrating that

---

[4] We note that, contrary to Taylor's argument on appeal, the Board's decision to adopt the contested parole policy constituted the factual predicate of this *ex post facto* claim. *See Brown*, 335 F.3d at 1261-62.

[5] Even liberally construing his appellate brief, Taylor does not argue that the district court erred in refusing to address expressly his *ex post facto* claim based on the Georgia Constitution, or that it abused its discretion in failing to exercise supplemental jurisdiction over this state law claim, nor does he cite any Georgia law or statutes. Therefore, he has waived any error with respect to this issue. *See Silvestri*, 409 F.3d at 1338 n.18.

[6] We reject the Board's argument that this claim is moot because all of the litigation documents were removed from Taylor's file before his parole hearing in 2006. As the district court explained, removal of the litigation documents from Taylor's file "does not necessarily mean that the Board did not or could not in the future retaliate against [him] based on the Board's knowledge of the contents of these documents."

10

the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" *Id.* (quoting *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)). Likewise, the First Amendment insulates from retaliation a prisoner who engages in a protected activity on behalf of other inmates. *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).

If a defendant meets the initial burden of demonstrating the absence of a genuine issue of material fact, a plaintiff must "establish[] a causal relationship" between his complaints and the alleged retaliatory actions in order to survive a summary judgment motion. *Farrow*, 320 F.3d at 1249.

"'[C]onclusory allegations without specific supporting facts have no probative value.'" *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citation omitted). Moreover, at least in the employment context, we have held that, "in the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

With respect to Taylor's 2004 parole hearing, there is no evidence of causal relationship between his protected activities and the denial of his parole at that time. *Cf. Farrow*, 320 F.3d at 1249. The undisputed evidence demonstrates that

11

the Board actually granted Taylor parole in 1988, three years *after* the litigation documents were prepared. Taylor has offered no explanation on why the Board would grant him parole within three years of the preparation of the litigation documents, but then retaliate against him for these documents in 2004, nearly sixteen years later, by denying him parole at that hearing.

Moreover, given the temporal remoteness of the preparation of the litigation documents and the 2004 parole hearing, we conclude that these documents do not have any probative value of retaliation. *Cf. Drago*, 453 F.3d at 1308.

Also, while the Board adhered to a policy of separating litigation files from clemency files, Taylor never established that written threats leveled against prison officials could not be considered during a parole hearing. Thus, even assuming *arguendo* that his 2004 parole denial was based, in part, on these threats, Taylor did not demonstrate the Board acted unlawfully in considering these threats when it denied him parole.

Finally, while Taylor asserts on appeal that he assisted other inmates in filing grievances and lawsuits against the Board, there is no evidence in the record to support this allegation, or to provide a time-frame as to when these events allegedly occurred. Accordingly, these conclusory allegations do not provide any probative evidence of retaliation. *Cf. Leigh*, 212 F.3d at 1217.

12

With respect to his parole denial in 2006 and the extension of his next tentatively set parole hearing to November 2014, Taylor has failed to show that these actions were based, at least in part, on retaliatory motives. The Board presented an affidavit from Masters, who explained that Taylor's unscheduled parole hearing in 2006 was not predicated on retaliatory motives. Instead, Masters indicated that she discovered during the course of the present lawsuit certain litigation files which were improperly included in Taylor's clemency file, and so she removed those files and then resubmitted his file in 2006, earlier than tentatively scheduled, to ensure that he received a proper parole review.

By contrast, Taylor offered nothing to contradict Masters's affidavit, except an unsupported argument that, because that the 2006 parole hearing was conducted approximately five months after he filed the present lawsuit, retaliatory motive must be presumed. This unsupported accusation was not sufficient to create a genuine issue of material fact, however. *Cf. Leigh*, 212 F.3d at 1217.

In addition, Taylor did not present any evidence to contradict or to undermine the Board's proffered reason for denying him parole – that his release "would not be compatible with the welfare of society . . . due to the serious nature of the offense(s) for which [he] [was] convicted." The undisputed evidence showed that Taylor was originally convicted of two counts of kidnaping a boy, and

13

upon his parole on those convictions, he sodomized and molested another boy, and upon release from those convictions, he kidnaped a third boy. Additionally, while in prison, Taylor wrote threatening letters to prison officials.

Finally, it is undisputed that Taylor's next parole hearing currently set in 2014 is within eight years of his latest parole hearing in 2006, as required by Board policy. Thus, the Board scheduled Taylor's next parole hearing within the time frame articulated in the amended Board policy.

## V. Equal Protection Claim

The Equal Protection Clause provides, in relevant part, that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV, § 1. We have recognized "that an inmate may challenge the denial of pardon or parole on equal protection grounds." *Fuller v. Georgia State Bd. Of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

The Equal Protection Clause is implicated in "class of one" claims, the type of claim alleged by Taylor, "'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir.), *cert. denied*, 127 S. Ct. 559 (2006) (citation

14

omitted). "A showing that two projects were similarly situated requires some specificity." *Id.* We have cited with approval the decision of *Racine Charter One, Inc. v. Racine Unified School Dist.*, 424 F.3d 677 (7th Cir. 2005), which concluded that "[t]o be considered 'similarly situated,' comparators must be prima facie identical in all relevant respects." *Racine*, 424 F.3d at 680 (quoted in *Campbell*, 434 F.3d at 1314).

"[A]n unexplained statistical showing of disparate racial treatment by a single entity over a period of time [may] raise the inference of an equal protection violation." *Fuller*, 851 F.2d at 1310. However, "exceptionally clear proof" of discrimination as compared to similarly situated comparators is required. *Id.*

In *Fuller*, an inmate attempted to use unexplained statistics to prove that he was discriminated against when compared to similarly situated white inmates who were paroled. *Id.* We ultimately rejected the inmate's evidence as irrelevant, noting that "[t]he decision to grant or deny parole is based on many factors such as criminal history, nature of the offense, disciplinary record, employment and educational history, etc. Fuller [the inmate] does not show himself to be similarly situated, considering such factors, with any inmates who were granted parole." *Id.*

After reviewing the record, we conclude that the district court here did not err in granting summary judgment for the Board on Taylor's equal protection

15

claim.

Taylor attempts to use statistical calculations to prove that there was a "huge disparity" between the amount of time that he has been required to serve in prison as compared to the amount of time served by other "parole violators," and paroled life-sentenced inmates serving sentences for murder, rape, armed robbery, kidnaping, or aggravated sodomy. However, these unexplained statistics do not provide "exceptionally clear proof" of discrimination as compared to similarly situated comparators. *See Fuller*, 851 F.2d at 1310. Taylor's comparator categories – "parole violators," and paroled life-sentenced inmates serving sentences for "murder," "rape," "armed robbery," "kidnaping," or "aggravated sodomy" – are extremely broad, and do not demonstrate that his self-identified comparators are "*prima facie* identical in all relevant respects." *Cf. Racine Charter One, Inc.*, 424 F.3d at 680 (persuasive authority) (citation omitted). These categories do not indicate that any of the comparators were recidivists who had been convicted of the same crimes of which Taylor was convicted (some of which were sexually based and others which were not), nor that all of their crimes involved minor children. Futher, Taylor does not explain whether these comparators had been paroled a number of times previously and had re-offended, or whether they threatened prison officials while incarcerated.

16

Further, even assuming *arguendo* that Taylor could demonstrate that he had been intentionally treated differently from others similarly situated, he has not shown that the Board acted irrationally in doing so. Taylor's criminal history, recidivism, and threats against prison officials provided a rational basis for the Board to find that parole "would not be compatible with the welfare of society."

Accordingly, we conclude that the Board was entitled to summary judgment on Taylor's "class of one" equal protection claim. *See Campbell*, 434 F.3d at 1314.

For the foregoing reasons, we affirm the judgment of dismissal.[7]

**AFFIRMED.**

---

[7] We also conclude that the district court did not abuse its discretion in failing to exercise its equitable powers to force the Board to grant Taylor parole.